IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KEVIN ELLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-02081-TMP |
| | ) |
| CITY OF BOAZ, *et al*., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This cause is before the court on the motions for summary judgment filed on May 2, 2016, by defendants City of Boaz ("the City") (doc. 60), Hoyle Hayes ("Hayes") (doc. 61), Mike Sparks ("Sparks") (doc. 62), and Tim Walker ("Walker") (doc. 63) (together "defendants"). The motions for summary judgment were accompanied by a joint brief in support of the motions (doc. 64) and evidentiary materials (doc. 65). The matter has been fully briefed, and the court has considered the evidence and arguments set forth by all parties. The parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 28). Accordingly, the court issues the following memorandum opinion.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 47 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R.

Case 4:14-cv-02081-TMP   Document 75   Filed 03/07/17   Page 3 of 18

Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983).

3

However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The evidence supporting a claim must be "substantial," Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379 (5th Cir., Unit B, 1981); a mere scintilla of evidence is not enough to create a genuine issue of fact. Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249-50 (11th Cir. 2004). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communications, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## FACTS

Viewing the pleadings in the light most favorable to the non-moving party, in this case the plaintiff, the following facts are relevant to the instant motion.

Kevin Ellis ("plaintiff") was hired by the City as a firefighter on September 11, 2002. At all relevant times, defendant Sparks was the fire chief, defendant Hayes was the personnel director for the City, and defendant Walker was mayor of the City. Ellis received a copy of the employee handbook for City employees on March 26, 2003, and he signed a form acknowledging receipt of the handbook. The version of the handbook received by the plaintiff was adopted by the city council on September 10, 2001. During the time plaintiff was employed as a firefighter for the City, he received two verbal counselings and five written warnings. He received some of the written warnings on January 4, 2012, for alleged offenses that took place in November and December 2011. Those written warnings resulted in a one-day suspension. The plaintiff filed a grievance with regard to the suspension. However, the suspension is not the subject of the instant lawsuit.

The plaintiff's employment was terminated in September 2012 for insubordination. He was accused of behaving in an unprofessional manner at the scene of a fire, but denies engaging in any unprofessional behavior. Sparks, the fire chief, asked Ellis to complete a written statement of events regarding the

incident.  Upon reporting for duty on September 17, 2012, Ellis had not completed the statement.  As of September 18, at the end of the plaintiff's shift, he had not given Sparks his written statement.  The plaintiff denies that he was specifically instructed to submit the statement prior to the end of his shift.  However, Sparks cited insubordination as the reason for the plaintiff's termination and specifically referenced that the plaintiff was instructed to complete the written statement before the end of his shift and failed to do so.  Sparks began the process for terminating the plaintiff's employment by preparing a memorandum and meeting with Hayes.  Sparks informed the plaintiff of his termination on September 24, 2012, citing insubordination as the reason.  The plaintiff signed a second form acknowledging receipt of an employee handbook on September 26, 2012, two days after his termination.  The decision to terminate the plaintiff was a joint decision by Sparks, Walker, and Hayes, but Sparks made the final decision.  Hayes cited several reasons for the plaintiff's termination, including discipline for insubordination administered July 13, 2010; January 4, 2012; and September 19, 2012.  The events were considered progressive discipline.[1]  The plaintiff appealed his termination according to the procedures set out in the employee handbook.

---

[1] The employee handbook sets out policies and procedures for disciplinary actions.  The handbook states that discipline incidents more than twelve months old will not be taken into account for purposes of progressive disciplinary action.  The handbook sets out that, first, an employee will receive documented verbal counseling, followed by a written warning, which the employee must sign, followed by a "final notice" and three-day suspension for the third violation

The employee handbook used by the City includes a section entitled "Dispute Resolution and Appeals Procedures," which sets out the process employees are required to follow to file and appeal a grievance. The handbook requires that, within five working days from the incident underlying the grievance, the employee must present the grievance, orally or in writing, to his immediate supervisor. The supervisor must make a careful inquiry into the circumstances surrounding the complaint and provide an answer to the grievance within three working days of the grievance being submitted. If the employee is dissatisfied with the decision, he may submit, in writing, the grievance to his department head within three days of the supervisor's decision. The department head must conduct a separate investigation and provide the employee with an answer, in writing, within five working days of receiving the written grievance. If the employee still is dissatisfied, he may file a written request for review by the personnel director within three working days of receiving the department head's decision. It is up to the personnel director to determine whether the complaint by the employee is subject to the grievance procedure. If it is, the personnel director must review the facts and circumstances surrounding the incident and the department head's written determination. The personnel director may meet with the department head, supervisor or witnesses during the course of the review. The personnel director

---

within a twelve-month period. The fourth violation in a twelve-month period will result in immediate discharge of the employee.

must issue a decision within fifteen working days of receiving the request for review. If the employee remains unsatisfied with the decision, he may appeal that decision, in writing, to the chairman of the personnel board within five days of the employee's receipt of the personnel director's determination. The decision then will be reviewed by the personnel board. The employee must provide a copy of this appeal to the personnel director. The personnel board must, within sixty days of the appeal, review the grievance, conduct a hearing, and announce a decision. The board's decision is final, subject to review by the Mayor and the City Council. If an employee does not follow the procedures set out in the handbook, the complaint or grievance is subject to immediate dismissal. The plaintiff testified at his deposition that he was aware of the procedure.

The plaintiff submitted a timely grievance to Sparks on September 27, 2012, three days following his termination. In the grievance, the plaintiff requested that his employment with the City be reinstated. Sparks completed a decision regarding the grievance on October 1, 2012, in which he outlined that the reason for the plaintiff's termination was that the plaintiff failed to timely submit a written statement regarding the events leading to the plaintiff's one-day suspension. On October 3, 2012, the plaintiff submitted to Hayes, by certified mail, an appeal of Sparks' decision as to the plaintiff's grievance, entitled "Notice: To Cure Statement of Employee Grievance." Hayes met with the plaintiff to discuss his

grievance.  On October 11, 2012, Hayes notified the plaintiff, in writing, that he was upholding the plaintiff's termination.  He also informed the plaintiff that, if he intended to proceed with his grievance, he should reference the Boaz employee handbook for information on how to proceed.

Under the procedure set out in the handbook, the plaintiff had until October 18, 2012, to appeal Hayes' decision to the chairman of the personnel board.  The employee handbook requires that a copy of any such appeal be submitted to the personnel director – Hayes.  The plaintiff mailed a copy of his appeal to the personnel board, and hand-delivered a copy of the appeal to Hayes.[2]  (Ellis, deposition, pp. 80-81).  On October 25, 2012, Hayes wrote a letter to Danny Smith, Boaz City Attorney, stating that, as of that date, he had not received anything further from the plaintiff.  Hayes did not ask whether the personnel board had received an appeal.  The plaintiff received a letter from Hayes dated October 30, 2012, which stated that Hayes had not received notice of an appeal to the personnel board.  The plaintiff did not speak to anyone with the City regarding the letter.  Walker sent a letter dated November 6, 2012, to the plaintiff confirming that the plaintiff's termination date was September 24, 2012.  Walker did not investigate the reasons for the plaintiff's termination or ask Sparks or Hayes about the circumstances.

---

[2]  Whether Hayes received a copy of the appeal is disputed.  However, for purposes of summary judgment, we take the facts in the light most beneficial to the nonmoving party.

The plaintiff had personal property at the Boaz fire station prior to his termination. He contends that defendants Sparks, Hayes, and Walker have refused to return his property to him. However, it is undisputed that, at the time of the plaintiff's termination, Sparks told him "you need to get your stuff." (Ellis Depo. p. 138). The plaintiff replied, "I got a grievance process . . . You're not supposed to bother none of my stuff until the grievance process is over with because I'm not officially fired until it's all over with." (Id.) Following the grievance process, the plaintiff spoke to Walker one time about retrieving his personal property. Walker referred the plaintiff to Sparks and told Sparks that any of the plaintiff's personal belongings should be returned to him.

## DISCUSSION

The plaintiff has two claims currently pending. First, the plaintiff asserts a claim pursuant to 42 U.S.C. § 1983, alleging that his right to procedural due process under the Fourteenth Amendment was violated by the termination of his employment without proper grievance procedures. Second, the plaintiff asserts a claim of conversion under Alabama state law against defendants Sparks and Walker.

## I.     Due Process

The vast majority of cases dealing with a violation of procedural due process rights in the employment context arise when an employee is discharged. Resolution of such a case begins with an examination of whether that employee had a property interest in continued employment.  While an at-will employee generally has no such property interest, a protectable interest has been found to exist in the realm of public employment where "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 494 (1985).  Therefore, actions such as firing an employee with such a property interest, without providing appropriate processes, may constitute a violation of the employee's procedural due process rights.  In this case, it is not disputed that the plaintiff had the right to due process prior to his termination subject to the process set out in the employee handbook. The defendants argue, however, that the plaintiff's procedural due process claim cannot stand, because the state of Alabama provides a constitutionally adequate remedy for due process violations.  Accordingly, the defendant argues, no procedural due process violation has occurred.

The Eleventh Circuit clarified and solidified the elements required to support a procedural due process employment claim in <u>McKinney v. Pate</u>, 20 F.3d 1550 (11th Cir. 1994).  The plaintiff in <u>McKinney</u> argued that, although he received a hearing prior to his termination, the decision-making body was biased against him and, therefore, his due process rights were violated by the state's failure to provide a neutral decision-maker.  20 F.3d at 1561.  Similarly to the plaintiff in the instant case, the plaintiff in <u>McKinney</u> did not raise his claims of procedural due process violation in state court prior to filing a federal lawsuit.  The Eleventh Circuit specifically determined that "the appropriate forum for addressing McKinney's claim is not federal court but a Florida state court possessing the ability to remedy the alleged procedural defect; that forum might well have prevented a violation of McKinney's procedural due process rights and thereby obviated the need for this suit."  <u>Id.</u>  The court explained this decision, stating:

> The Florida courts possess the power to remedy McKinney's loss both in terms of damages and equitable relief; as such, the Florida Procedures satisfy procedural due process and alleviate any deprivation McKinney may have suffered at the hands of the Board.
>
> We therefore conclude that McKinney's state remedy was capable of providing McKinney with all the relief warranted.  Even if McKinney's bias allegations are true, the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred.

Id. at 1564.

The Eleventh Circuit found that a similarly adequate remedy exists in Alabama state court in Bell v. City of Demopolis, Alabama, finding as follows:

> Bell attempts to distinguish *McKinney* in three ways. *First*, Bell asserts here that Alabama courts do not offer the same "thorough, almost de novo, review" of Florida's circuit courts. Alabama courts, however, like Florida courts, review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process. *See, e.g.*, *Ex Parte Tuskegee*, 447 So. 2d 713 (Ala. 1984); *Guinn v. Eufaula*, 437 So. 2d 516 (Ala. 1983).
>
> . . .
>
> The controlling factor in *McKinney* . . . was that the state had a mechanism in place which appears adequate to remedy *any* procedural due process violations. Though the plaintiff in *McKinney* did not pursue post-termination remedies, this Court determined that because there was an adequate state remedy available – state court review – no due process violation existed. Likewise in this case, the state offers an adequate remedy in the form of administrative as well as state court review.

86 F.3d 191, 192 (11th Cir. 1996). The Eleventh Circuit applied the same holding to a case out of Georgia, citing McKinney, stating that "because adequate state remedies were available to provide Plaintiff with the opportunity for a name clearing hearing, he has failed to state a procedural due process claim." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000).

The reasoning behind the Eleventh Circuit's determination that, if available, a remedy in state court must be pursued is not, as the plaintiff alleges, rooted in a requirement that the plaintiff exhaust administrative or state remedies. Instead, no procedural due process violation has legally *occurred* until the state remedies have proven to be inadequate to rectify the violation. The plaintiff cannot show that state remedies are inadequate if he has not pursued all such remedies. "When a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy." McKinney, 20 F.3d at 1560, citing Zinermon, 494 U.S. 113, 123, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990). In this way, the plaintiff's reliance on Patsy and Bateman v. Blue Cross-Blue Shield of Alabama fails to address the true underlying issue in this case. In Patsy, a case based on allegations of race and sex discrimination, the Supreme Court said, "we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies." Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 500, 102 S. Ct. 2557, 2559 (1982). Patsy, however, along with Bateman v. Blue Cross-Blue Shield of Alabama, 579 F. Supp. 265 (N.D. Ala. 1984), also cited by the plaintiff, hinges on the application of the exhaustion doctrine. The plaintiff is conflating the doctrine of exhaustion with what is at issue in the instant case – whether all elements of the plaintiff's claim have been met, effectively bringing the

claim into existence. In Patsy, for example, the underlying claim – race and sex-based discrimination – had occurred and was fully accrued, and would continue to exist whether or not the plaintiff exhausted state remedies. In the instant case, and all procedural due process actions, there simply cannot be a due process violation if an adequate state remedy is available. In such cases, the elements of a due process claim have not been met, and therefore the claim cannot go forward.

In the instant case, the plaintiff does not seriously advance an argument that the procedure provided to him was inadequate. The due process that is owed a public employee is "notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why the proposed action should not be taken is a fundamental due process requirement." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985), citing "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1281 (1975). The plaintiff acknowledges that the Employee Handbook provides a grievance process which allows the employee to make a grievance to his immediate supervisor and then appeal the determination to the department head, personnel director, and, finally, the personnel board, subject to review by the Mayor and City Council. The plaintiff took advantage of this grievance process to its full extent and, taking the facts in the light most favorable to the nonmoving plaintiff, the personnel board failed to review his appeal. However, the plaintiff still had the option to seek

redress for the personnel board's failure in the state court.  See <u>Bell v. City of Demopolis, Ala.</u>, 86 F.3d 191 (1996).  The plaintiff's failure to avail himself of due process review does not render inadequate the review process provided to him by the state.  Because the plaintiff has failed to meet the elements of a procedural due process claim, the defendants' motions for summary judgment as to the plaintiff's procedural due process claim are due to be GRANTED.

**II.  Conversion**

The plaintiff also asserts in his Amended Complaint a claim of state-law conversion against the defendants.  The plaintiff has conceded that the conversion claim is due to be dismissed as to the City and defendant Hayes.  (Doc. 30, p. 4; Doc. 73, p. 17).  Accordingly, the conversion claim remains pending only as to defendants Walker and Sparks.  To support a claim of conversion under Alabama law, the plaintiff must establish "(1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property."  <u>Drennen Land & Timber Co. v. Privett</u>, 643 So. 2d 1347, 1349 (Ala. 1994), citing <u>Gray v. Liberty Nat'l Life Ins. Co.</u>, 623 So. 2d 1156 (Ala. 1993); <u>Driver v. Hice</u>, 618 So. 2d 129 (Ala. 1993); <u>Gillis v. Benefit Trust Life Ins. Co.</u>, 601 So. 2d 951 (Ala. 1992).  The plaintiff must also show that the defendant's conversion of the property was for his own

benefit and that the plaintiff has the right to immediate possession of the property. Huntsville Golf Development, Inc. v. Ratcliff, Inc., 646 So. 2d 1334, 1336 (Ala. 1994).

The plaintiff contends that he had personal property at the Boaz fire station prior to his termination. The plaintiff testified at his deposition that Sparks told him to retrieve his belongings at the time of his termination. (Ellis Depo. p. 138). He told Sparks, however, that his personal belongings were to remain at the fire station until the grievance process had been completed. (Id.) The plaintiff argues that after this conversation his belongings went missing. The plaintiff does not dispute that, following the completion of the grievance process, he only once spoke to Walker about retrieving his personal property. The plaintiff does not dispute that Walker referred the plaintiff to Sparks and told Sparks that any of the plaintiff's personal belongings should be returned.

The plaintiff alleges that his property has been wrongfully detained, but has not alleged how either defendant has converted his property for their own benefit. Furthermore, the plaintiff does not dispute that defendant Sparks tried to get him to take his belongings with him at the time of his initial termination. He also does not dispute that when he raised the issue later with Mayor Walker, Walker instructed Sparks that the plaintiff's belongings should be returned. The plaintiff has not set forth any specific attempts he made to go and retrieve his property, or that any

such attempts were refused. He simply has not set forth the facts required to support the elements of a state-law conversion claim. Accordingly, defendants Walker and Sparks' motions for summary judgment are due to be GRANTED as to the plaintiff's claim of conversion.

## CONCLUSION

For the reasons set forth herein, the defendants' motions for summary judgment all are due to be GRANTED as to the plaintiff's procedural due process claim, and defendants Walker and Sparks' motions for summary judgment are due to be GRANTED as to the plaintiff's state-law conversion claim. Therefore, none of plaintiff's claims remain pending and the case and all claims stated therein is due to be DISMISSED WITH PREJUDICE. An order of final judgment will be entered contemporaneously herewith.

**DONE** and **ORDERED** on March 7, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE